## CHEMICAL BANK v. LYONS.

### (Circuit Court, E. D. Pennsylvania. May 20, 1905.)

### No. 42.

DECEIT—FRAUDULENT REPRESENTATIONS—KNOWLEDGE.

    That defendant made certain false representations to a note broker with reference to the validity of certain notes left with him for sale, which the broker sold to plaintiff, was insufficient to entitle plaintiff to maintain an action against defendant for deceit without proof that such representations were repeated by the broker to plaintiff and that plaintiff relied thereon in purchasing the notes.

Motion to Take Off Nonsuit.

J. W. M. Newlin, for plaintiff.
George L. Crawford, for defendant.

J. B. McPHERSON, District Judge. The plaintiff's statement sets forth a cause of action in deceit. It avers a right to recover $13,351.57, with interest,

—"Which said sum of money the said defendant, J. Harry Lyons, induced the plaintiff to pay him on the 29th day of October, 1895, by reason of the said defendant, J. Harry Lyons, making to the plaintiff, through James R. Plum, certain fraudulent representations now hereinafter set forth, in reliance upon which the plaintiff then paid to the said J. Harry Lyons the said sum of money."

The details of the transaction are thus set forth:

"J. Harry Lyons was secretary of a company known as 'Keen Sutterle Co.' This company, at the time of this payment by the plaintiff to the defendant, had in its possession seven promissory notes made by the following named persons, and coming due at the dates specified, for the amounts mentioned, and with the endorsements indicated in the following columns:

[Names, dates, and amounts omitted.]

"Plaintiff further avers that the said J. Harry Lyons, being at that time the secretary and general manager of the Keen Sutterle Co., brought said notes to said James R. Plum, and asked him to request the plaintiff to buy the said several notes above mentioned, which notes he stated were in his hands to be sold for the benefit of the Keen Sutterle Co. When this request was made by the defendant of the said James R. Plum, the defendant, in answer to inquiries by the said James R. Plum as to the said notes, and in order to induce plaintiff to purchase them, made to said James R. Plum the following representations, which defendant made with the understanding between himself and the said James R. Plum that the latter should communicate the same to the plaintiff.

"He stated to the said James R. Plum that the Keen Sutterle Co. was then solvent and was making money. He further stated to said James R. Plum that the makers of the said notes were all solvent, and that the notes were legitimate business paper, representing actual transactions in the ordinary course of business between the makers of the notes and Keen Sutterle Co., and that the said notes would be paid at maturity. The plaintiff avers that each one of the said statements was untrue and was known to be untrue by the said J. Harry Lyons at the time he made the same to the said James R. Plum to be communicated to the plaintiff, and that each of the said state-

ments was communicated by the said James R. Plum to plaintiff, and were believed to be true, and in reliance thereupon plaintiff then and there purchased the said several notes, and gave therefor to the said J. Harry Lyons the sum of $13,737.57, less discount.

"The plaintiff further avers that shortly thereafter the said Keen Sutterle Co. failed, and all of the makers of the notes above mentioned also failed, and were ascertained to be so worthless pecuniarily that no suits were brought against them because there was no possibility of collecting from them a sum equal to the expense of getting judgment against them.

"Upon the amount of the said notes the plaintiff has received the sum of $386.10, and with the exception of that sum the plaintiff has received nothing on account of the money so as aforesaid obtained from the plaintiff by the defendant by reason of the aforesaid false and fraudulent statements made by the said defendant to the said James R. Plum, and with defendant's knowledge communicated to plaintiff."

A compulsory nonsuit was entered at the trial on the ground that the bank had failed to prove that the alleged fraudulent representations were ever communicated to it by Mr. Plum—or, for that matter, by any one else—and a recent review of the evidence has confirmed my belief in the correctness of this ruling. Indeed, I am inclined to think that the nonsuit might be sufficiently rested also upon the inadequacy of the proof to establish the defendant's knowledge that the representations set out in the plaintiff's statement were false and were made with intent to deceive. As to all the notes except two, there is confessedly no evidence even that the representations were false, and as to these two the evidence concerning the defendant's knowledge of their falsity and concerning his intent to deceive is so meager as to be barely sufficient at the best. The action being founded upon fraud, the burden was on the plaintiff to prove the averments of deceit clearly, and to leave nothing to be guessed at by the jury. But I lay no stress upon this point. It is enough to say again that the record contains no evidence that such representations as may have been made by the defendant to Plum were repeated to the plaintiff, and it is fundamental in an action of deceit to show that the person suing was actually deceived. To quote from volume 14 of the American & English Encyclopedia of Law (2d Ed.) on page 406:

"To entitle a person to relief or redress because of a false representation, it is well settled that it is not enough to show merely that it was material, that it was known to be false, and that it was made with intent to deceive, but it must also be shown that it actually did mislead and deceive, or, in other words, that it was relied upon by the party complaining."

In support of this proposition numerous cases are cited in the footnotes.

As was said also in Farrar v. Churchill, 135 U. S. 615, 10 Sup. Ct. 773, 34 L. Ed. 246:

"The general principles applicable to cases of fraudulent representation are well settled. Fraud is never presumed, and where it is alleged the facts sustaining it must be clearly made out. The representation must be in regard to a material fact, must be false, and must be acted upon by the other party in ignorance of its falsity and with a reasonable belief that it was true. It must be the very ground on which the transaction took place, although it is not necessary that it should have been the sole cause, if it were proximate, immediate, and material. If the purchaser investigates for himself, and nothing is done to prevent his investigation from being as full as he chooses,

137 F.—62

he cannot say that he relied on the vendor's representations. Southern Development Co. v. Silva, 125 U. S. 247, 8 Sup. Ct. 881, 31 L. Ed. 678."

Mr. Plum was a notebroker, among other occupations, receiving a commission for negotiating the sale of commercial paper, and he advised the bank to buy the notes involved in the present controversy. His advice was contained in a letter which was not produced at the trial, nor was its absence accounted for. Its contents, therefore, were unknown; but the court was asked to let the jury guess at what the letter contained, and, in the absence of testimony on the subject, to find not only that the letter repeated such representations as may have been made by Mr. Plum, but that the bank relied upon them and discounted the notes on the faith of their accuracy, and not in reliance upon Mr. Plum's advice. I did not feel justified in submitting these questions at the trial, and the argument upon this motion has not changed my mind.

The motion to take off the nonsuit is refused, and to this refusal an exception is sealed in favor of the plaintiff.